UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRENDA PATTON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:03-CV-411 RM |
| | ) | |
| KEYSTONE RV COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## OPINION AND ORDER

This cause is before the court on Keystone RV Company's motion for summary judgment on Brenda Patton's claims against the company. Ms. Patton claims she suffered sexual discrimination, retaliation, and constructive discharge in violation of 42 U.S.C. § 2000(e) *et seq.* while employed at Keystone. Ms. Patton has requested that oral argument be held on the summary judgment record, but a review of the parties' submissions convinces the court that oral argument is not necessary. For the reasons that follow, the court grants Keystone's summary judgment motion.

### KEYSTONE'S REQUEST TO STRIKE

Summary judgment rulings ordinarily begin with a recitation of the facts viewed most favorably to the non-moving party, but the parties' submissions in this case require the court to start by determining the content of the summary judgment record. Keystone objects in its summary judgment motion to Ms.

Patton's deposition testimony because, according to Keystone, her testimony differs significantly from her sworn EEOC statement; in Keystone's reply, the company objects to Ms. Patton's affidavit, submitted in opposition to the summary judgment motion, as being inconsistent with her EEOC statement and her deposition testimony. The company argues that Ms. Patton's deposition and affidavit statements should be disregarded to the extent they depart or conflict with her EEOC statement.

When a document, such as an EEOC statement, contradicts a complaint to which it is attached, the facts or allegations of that document trump those of the complaint. Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 (7th Cir. 20004). In addition, a party opposing summary judgment cannot create an issue of fact by submitting affidavit testimony that contradicts the affiant's earlier deposition. Ineichen v. Ameritech, 410 F.3d 956, 963 (7th Cir. 2005); *see also* Cowan v. Prudential Ins. Co. of America, 141 F.3d 751, 756 (7th Cir. 1998) ("a deposition is the time for the plaintiff to make a record capable of surviving summary judgment – not a later filed affidavit"). "[T]hese doctrines are only triggered upon a threshold determination of a 'contradiction,' which only exists when the statements are 'inherently inconsistent,' not when the later statement merely clarifies an earlier statement which is ambiguous or confusing on a particular issue." Flannery v. Recording Indus. Ass'n of America, 354 F.3d at 638.

Ms. Patton's complaint and deposition testimony set forth facts not mentioned in her EEOC statement. For example, Ms. Patton alleges in her

2

complaint that Mr. Ramey's conduct included "solicitations for sexual favors" and that she complained to the plant manager about Mr. Ramey's conduct but Keystone "failed to take reasonable remedial action in response to her complaints." Compl., ¶ 4. Her EEOC statement, which was submitted to the EEOC one day after she quit her job and was prepared and signed by her attorney, makes no mention of requests for sexual favors or complaints to anyone at Keystone. In her summary judgment response, Ms. Patton didn't address Keystone's argument in this regard or offer any explanation for the differences between her EEOC statement and her deposition testimony. An examination of the statements, though, convinces the court that Ms. Patton's deposition testimony isn't so inherently inconsistent with or contradictory of her EEOC statement that the deposition should be stricken. Accordingly, Keystone's request to disregard Ms. Patton's deposition testimony is denied.

Ms. Patton's affidavit, though, is quite different – most of the statements in her affidavit greatly exaggerate or directly contradict her EEOC statement and deposition testimony. Contradictory facts that Ms. Patton set forth in her affidavit and relied upon in her opposition to summary judgment include her assertions that (1) the harassment began in August 2002; (2) Mr. Ramey described to her an affair he had with another Keystone employee and she believed that his discussion included an expression of his desire to have a sexual relationship with her; (3) she complained about Mr. Ramey on a number of occasions to Joe Solis; (4) Joe Solis, Glen Miller, and Keith Weaver instructed her to hide when Mr. Ramey was in the

3

plant; she hid in the bathroom, under the stairs, in the electrical department, and in the tool crib at least three or four times a week, with each incident lasting thirty minutes or longer; each time she hid, she wasn't able to do her work and was required to make it up later; and (5) the reason she didn't want to work at the Goshen Plant was because she wouldn't be able to hide from Mr. Ramey.

A party cannot, without explanation, retract prior admissions by submitting an affidavit containing "barefaced inconsistencies with [her] prior statements." Seshadri v. Kasraian, 130 F.3d 798, 804 (7th Cir. 1997). Ms. Patton has offered no explanation. An inconsistent affidavit might preclude summary judgment, for example, "if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence." Bank of Illinois v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1170 (7th Cir. 1996). Ms. Patton hasn't alleged that she was confused at her deposition or that her affidavit is based on newly-discovered evidence.

When a deposition and an affidavit are in conflict, "the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken." Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995). "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." Ineichen v. Ameritech, 410 F.3d 956, 963 (7th Cir. 2005) (*quoting* Bank of Illinois v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168 (7th Cir. 1996)); *see also* Payne v. Pauley, 337

4

F.3d 767, 773 n.1 (7th Cir. 2003) (because plaintiff's "version of the facts has morphed through the course of litigation," plaintiff admonished that "if she is later found to have willfully misrepresented [the] facts, she will be heavily sanctioned"). Ms. Patton has offered no explanation for the contradictions contained in her affidavit, and Keystone's request that it be disregarded is granted.

## FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Ms. Patton as is reasonable. Ms. Patton became employed at Keystone in April 2001; from June 2001 until November 8, 2001, she worked in the final finish department of Keystone's Plant 7 in Elkhart, Indiana (the Elkhart Plant). On November 11, 2001, Ms. Patton was transferred to Keystone's plant in Goshen, Indiana (the Goshen Plant) and assigned to work in the final finish department there.

While Ms. Patton worked at the Elkhart Plant, her immediate supervisor was Joe Solis, the group leader of the final finish department. Mr. Solis reported to the assistant plant manager, Glen Miller, who, in turn, reported to plant manager Keith Weaver. Keystone's Manufacturing Manager was Rod Ramey, who oversaw five Keystone plants, including both the Elkhart and Goshen plants. During the relevant time period, the work force at the Elkhart Plant was being downsized – several employees were terminated and others were transferred to the newer Goshen Plant.

Ms. Patton says Mr. Ramey began harassing her in early October 2002 while she worked at the Elkhart Plant. The events complained of by Ms. Patton include Mr. Ramey's comment to Mr. Solis about a rumor at the Goshen Plant that he (Mr. Ramey) and Ms. Patton "are doing it," and Mr. Ramey's later questioning of Ms. Patton about sexual activity between her and Mr. Solis. Ms. Patton says that at about that same time, Mr. Ramey began to leer at her; Mr. Ramey once placed his hand on her lower leg; on another occasion he touched her thigh and moved his hand up her leg until he reached her underwear; during work hours he put his face near hers and told her she should call him if she wanted to go out for a drink; and upon her initial arrival at the Goshen Plant he touched her inappropriately. Ms. Patton says at various times she complained about Mr. Ramey's behavior to the plant manager, who told her he would "handle it," but, according to Ms. Patton, nothing was done.

Ms. Patton learned on Friday, November 8, that she was being transferred to the Goshen Plant, effective the following Monday, November 11. She objected to the transfer and, through a call made by Keith Weaver, told Mr. Ramey she didn't want to go to Goshen and that going to Goshen would create problems arranging day care for her children. She says in response she was directed to report to Goshen on Monday and use the weekend to make arrangements for her children. Ms. Patton was assigned to be the head cleaner at the Goshen Plant.

Upon reporting to work in Goshen, Ms. Patton says she was greeted by Mr. Ramey, who put his arm around her waist, continued to move his hand down onto

6

her hip/buttocks area, and said, "You really brighten this place up." Although Ms. Patton tried to pull away, Mr. Ramey maintained his "embrace" for about forty seconds as they walked to Ms. Patton's workstation. She says Mr. Ramey stared at her for the remainder of the day.

Ms. Patton reports that upon her arrival at work the following day (November 12), she was confronted by Mary, a co-worker who, until November 11, had been the head cleaner at the Goshen Plant. Ms. Patton says Mary angrily accused her of getting the head cleaner job as a reward for granting sexual favors to Mr. Ramey. Following this confrontation, Ms. Patton left and drove to the Elkhart Plant to try to discuss her situation with Keith Weaver. She instead encountered Mr. Ramey. She says she told Mr. Ramey about Mary's comments to her and said she didn't want to work at the Goshen Plant. She also says she was angry and called Mr. Ramey a jerk during her talk with him. Mr. Ramey's response was to tell Ms. Patton that she needed to "get it together" and return to the Goshen Plant if she wanted a job. Ms. Patton never returned to the Goshen Plant or to her employment with Keystone and claims she was constructively discharged.

Ms. Patton filed a charge of sex discrimination, retaliation, and constructive discharge with the EEOC and after receiving her right to sue letter, filed suit in this court claiming she was sexually harassed by Mr. Ramey, she suffered retaliation in the form of an intolerable work environment for refusing Mr. Ramey's sexual demands, and she was constructively discharged when Keystone didn't

7

take reasonable steps to end Mr. Ramey's harassment of her. She seeks compensatory and punitive damages, fees, and costs.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has

that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

DISCUSSION

*(a) Sexual Harassment*

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from "requiring people to work in a discriminatory hostile or abusive environment." Shanoff v. Illinois Dep't of Human Servs., 258 F.3d 696, 701 (7th Cir. 2001) (*quoting* Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To establish she was the victim of sexual harassment that created a hostile work environment, Ms. Patton must show that she was subjected to unwelcome harassment, the harassment was based on her gender, the harassment was severe or pervasive so as to unreasonably interfere with her work performance and create a hostile or abusive situation, and there is a basis for employee liability. Smith v. Northeastern Illinois Univ., 388 F.3d 559, 556 (7th Cir. 2004); *see also* Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir. 1997) (offensive conduct must be so severe and pervasive as to alter the conditions of victim's employment "in a significant way").

9

An employer is subject to vicarious liability for a hostile work environment created by a supervisor with immediate or successively higher authority over the employee. Cooper-Schut v. Visteon Automotive Sys., 361 F.3d 421, 426 (7th Cir. 2004); Wolf v. Northwest Indiana Symphony Society, 250 F.3d 1136, 1142 (7th Cir. 2001). Ms. Patton's allegations relate to actions of Rod Ramey, who, as the manufacturing manager of Keystone's plants during Ms. Patton's employment there, qualifies as a supervisor. The standard for determining an employer's liability for a hostile work environment was set forth by the Supreme Court in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998):

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

See also Faragher v. Boca Raton, 524 U.S. 775, 807-808 (1998). An employer is not subject to liability, even under the standard quoted above, "if the sexually objectionable environment created by a supervisor does not rise to a level actionable under Title VII." Fall v. Indiana Univ. Bd. of Trustees, 12 F. Supp. 2d

10

870, 876 (N.D. Ind. 1998) (*citing* Burlington Indus. v. Ellerth, 524 U.S. at 753-754).

To prevail on her claim of a hostile work environment, Ms. Patton must show that her work environment was both objectively and subjectively hostile. Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005). "In other words, the environment must be 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Smith v. Northeastern Illinois Univ., 388 F.3d 559, 566 (7th Cir. 2004) (*quoting* Cerros v. Steel Technologies, Inc., 288 F.3d 1040, 1045 (7th Cir. 2002)). At the summary judgment stage, Ms. Patton has the burden of coming forward with evidence sufficient to support a finding that because of her gender, her workplace was "permeated with discriminatory intimidation, ridicule and insult," Cooper-Schut v. Visteon Automotive Sys., 361 F.3d 421, 426 (7th Cir. 2004), that was sufficiently severe or pervasive to alter the conditions of her employment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004). In determining whether the plaintiff has met this standard, a court must consider all the circumstances, including the frequency of the conduct; its severity; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's ability to complete her assigned duties. Mendenhall v. Mueller Streamline Co., No. 04-1515, 2005 WL 1994114, * 4 (7th Cir. Aug. 19, 2005).

11

Ms. Patton maintains Mr. Ramey's conduct was sufficiently severe and pervasive to alter the conditions of her employment, but her deposition testimony belies her claim that Mr. Ramey's conduct interfered with her ability to do her job:

> Q   While this was going on with Rod [Ramey], everything that we've talked about, were you still able to do your job?
> A   Yes. I still did my job. It wasn't comfortable, but I did it.
> Q   Did it affect your ability to do your job in a timely manner?
> A   No. Actually, it even – when you're stressed, when I'm stressed, being a woman, I work harder and faster. So, yeah, they even got more out of me even being stressed. . . . So it was their benefit, not mine.

Patton Dep., at 143-144. Ms. Patton argues, though, that she regarded Mr. Ramey's conduct to be hostile and severe; she claims she suffered at least one panic attack and often times felt physically ill while he was near her work area. Even assuming Ms. Patton found her workplace subjectively hostile, an examination of the incidents of which she complains doesn't support a finding that those incidents created an environment that a reasonable person would find hostile or abusive. Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005).

The incidents of which Ms. Patton complains include two rumors Mr. Ramey related to her;[1] being touched by Mr. Ramey while the two of them were working inside trailer units, once on her lower leg and once on her thigh; being touched by Mr. Ramey upon her arrival at the Goshen Plant when he put his arm around her waist and lowered his hand onto her hip/buttocks; being told by Mr. Ramey that

---

[1] One of those incidents involved Mr. Ramey asking her about the truth of a rumor that she and Joe Solis were having an affair. While Ms. Patton says she considered that conversation to be harassment, she admitted at her deposition that it was appropriate for Mr. Ramey, as their supervisor, to inquire about a possible affair between two workers at the company. [Patton Dep., at 82-83.]

12

if she wanted to have drink she should call him; and being stalked by Mr. Ramey,[2] which Ms. Patton explains as Mr. Ramey hovering around and constantly staring at her as she worked.[3] The totality of that conduct, though, while boorish and inappropriate simply does not rise to the level of actionable harassment. *See, e.g.*, Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (noting that Title VII is not a code of general civility and simple teasing, offhand comments, and isolated incidents that are not extremely serious do not amount to actionable harassment); Moser v. Indiana Dep't of Corrections, 406 F.3d 895 (7th Cir. 2005) (no hostile

---

[2] Ms. Patton also alleged in her complaint that Mr. Ramey's harassment involved "solicitations for sexual favors," [Compl., ¶ 4], but she hasn't set forth any argument or evidence relating to that allegation. In fact, Ms. Patton was asked about that claim at her deposition:

| | |
|---|---|
| Q | Did [Rod Ramey] ever expressly ask you for sex or a sex act? |
| A | No. He never asked me. |
| Q | Did he ever tell you that if you wouldn't go out on a date with him that he would retaliate against you? |
| A | No. |
| Q | So, he never said, "If you don't go out on this date with me, I'm gonna transfer you to a position you don't like or I'm gonna fire you."? |
| A | No. |
| Q | And did he make any threats like that at all? |
| A | No. |
| Q | And the same question with respect to, you know, sex. Did he ever say, "If you don't have sex with me or do something like that with me, I'm going to do something that will – that's gonna affect your job." |
| A | No. |

Patton Dep., at 141-142.

Keystone has moved for summary judgment on Ms. Patton's retaliation claim, and Ms. Patton hasn't challenged Keystone's argument, specified or pointed to conduct by Mr. Ramey that she maintains was retaliatory, or argued that, or indicated when, Mr. Ramey's behavior shifted from harassment to retaliation based on her refusing his advances. Keystone is entitled to summary judgment on any claim Ms. Patton was attempting to make based on her allegation that Mr. Ramey's conduct involved solicitation for sexual favors or that he retaliated against her for her "refusal to accede to [his] demands for sexual favors." [Compl., ¶ 6].

[3] Ms. Patton's job was to clean the inside of trailer units. She claims that while she was working inside the units, Mr. Ramey would stare at her. She says she could see him each time she looked out the window of the unit she was cleaning and claims he would stand in one place for 15 to 45 minutes at a time. Ms. Patton says she felt uncomfortable and fearful that he would come inside the unit where she was working and physically assault her. [Patton Dep., at 201-204.]

work environment where male employee spoke down to female co-workers, made reference to plaintiff's "tits," told several new male employees to watch out because plaintiff likes good-looking men, commented on female job applicants' physical appearance, asked plaintiff if she had gotten a new set of legs, used profanity in his office, told a joke about a boy's anatomy, made an innuendo about his penis size when a dimension was mentioned by a female co-worker, told others, outside plaintiff's presence, that a female co-worker was running a whorehouse, and said that a female co-worker "just needed a good f\*\*\*"); McPherson v. City of Waukegan, 379 F.3d 430 (7th Cir. 2004) (no hostile work environment where supervisor asked employee what color bra she was wearing, suggestively asked if he could make a "house call" when she called in sick, pointed to an outfit in a Victoria's Secret catalog and said she would look good in it, and pulled back her tank top to see what color bra she was wearing); Hilt-Dyson v. City of Chicago, 282 F.3d 456 (7th Cir. 2002) (holding plaintiff's allegations that supervisor rubbed her back, squeezed her shoulder, and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create an inference of a hostile work environment); Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir. 1998) (finding plaintiff's complaints of teasing, ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four isolated incidents where co-worker briefly touched plaintiff's arm, fingers, and buttocks did not constitute sexual harassment); Koelsch v. Beltone Electronics

14

Corp., 46 F.3d 705 (7th Cir. 1995) (court considered conduct of harasser (who was company's president) – which consisted of one occasion when he removed his shoe and rubbed his foot against plaintiff's leg despite her demands to stop, and another occasion when he grabbed her buttocks – and concluded that his advances, even together with plaintiff's allegations of sexually suggestive jokes and pranks, didn't "poison the workplace"); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333 (7th Cir. 1993) (no actionable sexual harassment where supervisor called plaintiff a "dumb blonde," placed his hand on her shoulder several times, put "I love you" signs in her work area, attempted to kiss her, and asked her out on dates); *but see* McPherson v. City of Waukegan, 379 F.3d 430 (7th Cir. 2004) (hostile work environment existed once supervisor assaulted employee by putting his hand up her shirt and feeling her breasts and sticking his hand down her pants and inserting his finger into her vagina); Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000) ("The physical, intimate, and forcible character of the acts at issue here persuades us that a factfinder could deem Hostetler's work environment hostile. . . . [H]er co-worker did not simply steal a quick kiss from her lips, but, holding her face in his hands, forced his tongue into her mouth. When Hostetler subsequently used her body to shield herself from an apparent repeat of that intrusion, [he] began to unfasten her bra, threatening to do so completely and stopping only when another employee entered the office.").

While employees "are entitled to a work environment that allows them to function effectively and to do the work they were hired to perform to the best of

15

their ability without having to run a gauntlet of sexual abuse or face other forms of discrimination," Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11th Cir. 1999), Ms. Patton hasn't come forward with evidence that the conduct at issue unreasonably interfered with her work performance or altered the conditions of her employment. Viewing the record in the light most favorable to Ms. Patton, the court concludes no reasonable jury could find Ms. Patton has demonstrated that Mr. Ramey's behavior was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," Pennsylvania State Police v. Suders, __ U.S. __, 124 S. Ct. 2342, 2354 (2004) (*quoting* Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)), or that the offensive conduct created the "hellish" environment that would violate Title VII. Whittaker v. Northern Illinois Univ., No. 04-3759, 2005 WL 2291736, * 3 (7th Cir. Sept. 21, 2005). Keystone is entitled to summary judgment on Ms. Patton's sexual harassment, retaliation, and hostile work environment claims.

### (b) Constructive Discharge

Ms. Patton's constructive discharge claim requires her to demonstrate, first, that a hostile work environment existed and then to show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Pennsylvania State Police v. Suders, 124 S. Ct. at 2347; *see also* Williams v. Waste Mgmt. of Illinois, 361 F.3d 1021, 1032 (7th Cir. 2004) ("Constructive discharge occurs when an employee's job becomes so unbearable

16

that a reasonable person in that employee's position would be forced to quit."). "The working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because . . . an employee is expected to remain employed while seeking redress." Robinson v. Sappington, 351 F.3d 317, 336 (7th Cir. 2003); *see also* Hertzberg v. SRAM Corp., 261 F.3d 651, 658 (7th Cir. 2001) (noting plaintiff needs to show facts that go beyond an "ordinary" Title VII violation, and drawing a distinction between conditions that are "unreasonable"– in which case the employee must continue working – and those that are "intolerable"); Grube v. Lau Indus., Inc., 257 F.3d 723, 728 (7th Cir. 2001) ("Absent extraordinary conditions, a complaining employee is expected to remain on the job while seeking redress [for Title VII violations].").

As discussed above, Ms. Patton hasn't established the existence of a hostile work environment and so can't prevail on her claim of constructive discharge. Herron v. DaimlerChrysler Corp., 388 F.3d 293, 303 (7th Cir. 2004). Keystone is entitled to summary judgment on Ms. Patton's constructive discharge claim.

CONCLUSION

Based on the foregoing, Brenda Patton's motion for oral argument [docket # 28] is DENIED, and the motion of Keystone RV Company for summary judgment [docket #27] is GRANTED.

SO ORDERED.

ENTERED:   September 27, 2005

                 /s/ Robert L. Miller, Jr.
                 The Honorable Chief Judge
                 United States District Court