```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         SOUTH BEND DIVISION
```

BRENDA PATTON,                )
                              )
           Plaintiff          )
                              )
     vs.                      )     CAUSE NO. 3:03-CV-411RM
                              )
KEYSTONE RV COMPANY,          )
                              )
           Defendant          )

## OPINION AND ORDER

At the final pretrial conference conducted on January 23, the court took under advisement the portion of plaintiff Brenda Patton's motion in limine in which she seeks to exclude evidence of a letter sent by Richard Bowers—defendant Keystone RV Company's in-house counsel—to her attorney, Patrick O'Leary. Ms. Patton seeks to exclude the letter as connected with an offer of compromise under Federal Rule of Evidence 408. For the reasons that follow, the court overrules that portion of the motion in limine to the extent it is based on Rule 408.

As amended effective December 1, 2006, Rule 408(a)(2) excludes evidence of "conduct or statements made in compromise negotiations . . ." "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . .." Rule 408 does not exclude evidence offered for any other purpose, such as to prove a witness's bias or prejudice or to negate a contention of undue delay. FED. R. EVID. 408(b); Zurich American Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 689 (7th Cir. 2005). When evidence of statements made in compromise negotiations is offered for some purpose other than the prohibited purpose, the

balancing of probative value against the risk of unfair prejudice governs admission. FED. R. EVID. 403; 1 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 408:1, at 969-970 (6th ed. 2006). The party seeking to exclude a statement under Rule 408 bears the burden of persuading the court that the statement was made as part of compromise negotiations. <u>Raybestos Products Co. v. Younger</u>, 54 F.3d 1234, 1241 (7th Cir. 1995). In support of her argument, Ms. Patton offers only the letter itself and the time frame in which it was sent.

Ms. Patton's last day at work at Keystone RV was November 12. She contends Keystone RV constructively discharged her through sexual harassment by Rod Ramey, who was her supervisor in the sense that he had the ability to fire her. Mr. Bowers wrote to Mr. O'Leary on December 13, a month later. The letter's first paragraph puts the litigation setting in context:

> Confirming our conversations, we just received an EEOC complaint from your client. Would you let me know if your client has decided not to pursue this, in which case we would appreciate it if you would inform us and the EEOC of that.

Ms. Patton had filed her claim with the EEOC, and Keystone RV knew of it by December 13. For whatever reason, Keystone RV had hopes that Ms. Patton would withdraw that complaint.

None of this information appears to be sufficient alone to warrant admission. The litigation context easily could be presented without resort to the letter, so its incremental probative value appears slight at this point. On the other hand, a jury might infer that Ms. Patton had offered to withdraw her complaint

under certain conditions—the sort of offer that implicates Rule 408.

The letter's second paragraph sets forth what Keystone RV says it thought Ms. Patton's employment status was since she claims to have been constructively discharged:

> Our employment records reflect as of today that Brenda Patton is on leave from our company, even though she has not worked for some weeks and has not contacted us since she mentioned the Family Medical Leave Act in a conversation with Rod Ramey. Mr. Ramey told her to contact the Human Resource Administrator Tammy Lovejoy, but Tammy never heard from your client. It remains an option for your client to request leave under the Family Medical Leave Act if she chooses to do so, but this option will not remain open indefinitely.

This paragraph might develop probative value at trial, but offers little that is apparent today. Further, it seems to set forth statements by Mr. Ramey, which would be hearsay if offered by Keystone RV. Compare FED. R. EVID. 801(d)(2)(D).

The letter's third paragraph addressed inquiries Keystone RV had received about Ms. Patton's status from other agencies:

> Since your client left us, we have received a questionnaire from the state agency for Unemployment because your client had applied for unemployment benefits. We chose not to return the questionnaire. We also yesterday received an inquiry about your client from an agency distributing food stamps, because your client applied for those. We provided that agency, as it requested, with the amount of your client's last pay check.

This paragraph would seem to fall within the scope of the court's order in limine concerning what Keystone RV described as Ms. Patton's attempts to "work the system." It may gain added probative value as the trial proceeds, but at this point seems to have none at all.

The fifth paragraph is an invitation to the jury to speculate as to what was said in the attorneys' conversation:

> While we discussed other things, there is no need to recite those in this letter. Please let me know if you think this letter needs any corrections, and communicate our positions and assurances to your client.

The fourth paragraph, in contrast, teems with probative value. It sets forth what could be seen as Keystone RV's efforts to do what it is required to do to avail itself of the affirmative defense articulated in <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 745 (1998):

> At the time when Brenda last worked at Keystone, I assured you that we could provide your client with a job free from harassment at either our Elkhart or our Goshen facility. If your client elected to work in Elkhart again, she would be assigned a different group than the group where she previously worked. I told you that I would ensure that no change affecting your client's employment would happen without review from management in the Corporate Office. These assurances are still good but we can't leave the employment offer open indefinitely.

An employer claiming benefit of the <u>Ellerth</u> defense must show that it took corrective action in a timely manner. Any time an employee claims constructive discharge and the employer claims ignorance of the harassment that is said to have led to the constructive discharge, the corrective action will have followed the discharge. Any post-tort "what are we going to do about it" discussions smack of compromise negotiations and may be excludable as such, but applying Rule 408 to this communication would eliminate the <u>Ellerth</u> defense altogether. Courts have dealt with the propriety of post-termination corrective action in the past: it was

4

held sufficient to warrant summary judgment for the employer in <u>McPherson v. City of Waukegan</u>, 379 F.3d 430 (7th Cir. 2004), though no Rule 408 objection seems to have been made.

In short, the Supreme Court has found within the supervisor liability provisions of the Civil Rights Act of 1991 an affirmative defense that often requires an employer to propose corrective action that would allow an employee to return to work. To exclude all such "offers" pursuant to Rule 408 would eviscerate the <u>Ellerth</u> defense.

This is not to say that all "offers" by the employer (or the employee in response) will be admissible despite Rule 408. To hypothesize an easy case, had the Bowers letter confirmed a statement by Mr. O'Leary that Ms. Patton would be willing to return to work if Keystone RV paid her $10,000 and gave Mr. Ramey a stern lecture—or a statement by Mr. Bowers of Keystone RV's willingness to allow Ms. Patton to return to work under the same conditions—Rule 408 would command exclusion, either alone or in combination with Rule 403.

The reason some post-termination "offers" must be admitted in furtherance of the <u>Ellerth</u> defense while others must be excluded must arise from the nature of the <u>Ellerth</u> defense itself. Rule 408 excludes evidence of offers of compromise only if offered "to prove liability for or invalidity of the claim or its amount." The <u>Ellerth</u> defense defeats liability for a sexual harassment/constructive discharge claim, but does not do so by challenging the claim. The affirmative defense arises only if the plaintiff has a valid employment discrimination claim—and, as noted,

5

the affirmative defense may not arise until the plaintiff already has begun the process of bringing an employment discrimination claim. Accordingly, notwithstanding the tension with the words of Rule 408 ("not admissible to prove liability for or invalidity of the claim"), the Ellerth defense must be seen as an "other purpose" for which evidence of an offer of compromise might be admissible.

As already noted, compromise evidence offered for a purpose other than that forbidden by Rule 408 still requires analysis under Rule 403. Such analysis is always difficult before trial, but the risk of unfair prejudice seems low at this stage. There is virtually no chance that the jury will read the Bowers letter's fourth paragraph as implying a concession by Mr. O'Leary that Ms. Patton's claim is invalid or worth less than she might seek at trial. Nor is there a significant risk that a properly instructed jury will conclude that, while Keystone RV had not shown that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and [Ms. Patton] unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Keystone RV] or to avoid harm otherwise," Burlington Industries, Inc. v. Ellerth, 524 U.S. at 745, the Bowers letter came close enough to reduce Ms. Patton's recovery.

Even a slight risk of unfair prejudice can substantially outweigh substantially lesser probative value, but this does not appear to be such an instance. Ms. Patton argues that the Ellerth defense is not available to Keystone RV, because she suffered a tangible employment action—a constructive discharge. She cites Robinson v. Sappington, 351 F.3d 317, 335 (7th Cir. 2003), in support

6

of her argument, but that decision lacked benefit of the Supreme Court's subsequent clarification of employer liability for constructive discharge in <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 148-149 (2004), which held that an official act ordinarily must have triggered the discharge for the employer to be vicariously liable for its agent's sexual harassment.

Perhaps as the case unfolds at trial, for reasons not apparent at this point, it will develop that Keystone RV is not entitled to raise the <u>Ellerth</u> defense. At this point, though, the fourth paragraph of the Bowers letter does not appear to be inadmissible under the Federal Rules of Evidence. Accordingly, the court DENIES the portion of the plaintiff's motion in limine [docket #57] that addresses the topic of the December 13 letter from Richard Bowers to Patrick O'Leary. The court will entertain motions to redact other portions of the letter.

ENTERED:   January 24, 2007


　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　United States District Court